IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | Chapter 7 |
| Peter S. Kickel ) | No. 04 B 47448 |
| ) | Honorable Bruce W. Black |
| Debtor ) | (Joliet) |
| ) | |
| ) | |
| Thomas B. Sullivan, Trustee ) | |
| Plaintiff ) | |
| ) | Adv. No.  05 A 01703 |
| vs. ) | |
| ) | |
| Peter S. Kickel ) | |
| Defendant ) | |

| | |
|---|---|
| In Re: ) | |
| ) | Chapter 7 |
| Midwest Millwork, Inc. ) | No. 04 B 47450 |
| ) | Honorable Bruce W. Black |
| Debtor ) | (Joliet) |
| ) | |
| ) | |
| Thomas B. Sullivan, Trustee ) | |
| Plaintiff ) | |
| ) | Adv. No.  05 A 01797 |
| vs. ) | |
| ) | |
| Peter S. Kickel ) | |
| Defendant ) | |

**MEMORANDUM OPINION**

These two adversary proceedings, filed in related bankruptcies, came before the court for

1

a consolidated trial. The complaint filed in the chapter 7 case of Peter S. Kickel (the Individual Debtor) contains seven counts objecting to his discharge under section 727 of the Bankruptcy Code.[1] He is also the defendant in the amended complaint filed in the chapter 7 case of Midwest Millwork, Inc. (The Corporate Debtor). That complaint contains three counts. The first seeks to avoid fraudulent conveyances under section 548. The second seeks to recover post-petition transfers made from the Corporate Debtor to the Individual Debtor pursuant to section 549. The third seeks to recover post-petition transfers to various third parties pursuant to sections 549 and 521(a)(4). Thomas B. Sullivan is the Trustee in both chapter 7 cases and the plaintiff in both adversaries.

Jurisdiction lies pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The complaints initiate core proceedings under 28 U.S.C. § 157. Venue is proper under 28 U.S.C. § 1409(a).

For the reasons that follow, the court will deny the Individual Debtor a discharge and will order him to turn over $225,105.29 to the Trustee.

Involuntary chapter 7 petitions were filed against the Individual Debtor and the Corporate Debtor on December 28, 2004. Orders for relief were entered in both cases on January 26, 2005. On April 25, 2006, a pre-trial order set the complaints for trial and ordered the parties to cooperate in the preparation of a pre-trial statement. Although counsel for the Trustee prepared and submitted the plaintiffs' portions of the statements, counsel for the debtors did not cooperate in the process and submitted no statement of his own.

---

[1] 11 U.S.C. § 101 *ff.* Any reference to "section" is a reference to the Bankruptcy Code unless another reference is stated.

2

When the cases were called for trial, the court granted the Trustee's motions in limine and refused to allow the Individual Debtor or the Corporate Debtor to present evidence in either case. At the start of the trial, while responding to the motions in limine, counsel for the debtors stipulated to all of the proposed stipulated facts contained in both of the plaintiff's pre-trial statements, with one minor exception. Those stipulated facts are incorporated herein. Further, counsel for the debtors had no objection to any of the Trustee's proposed exhibits, and all were admitted.

The Trustee was the only witness. Although the Individual Debtor testified as an offer of proof, the offer was rejected. Accordingly, the question is whether the stipulated facts, the exhibits, and the Trustee's testimony establish the plaintiff's causes of action.

### Discharge of Peter Kickel

Count 1 against the Individual Debtor in the individual case seeks denial of discharge pursuant to section 727(a)(2)(A) for fraudulent pre-petition transfers of property of the Corporate Debtor. The allegation is that the Individual Debtor, "with the intent to hinder, delay, or defraud creditors," transferred property of the Corporate Debtor by paying himself over $42,000 from the Corporate Debtor in the ninety days prior to the filing and by obtaining over $83,000 from the Corporate Debtor by writing and cashing checks payable to "cash." The numbers are supported by the exhibits,[2] and the Individual Debtor does not dispute them. He does deny that the evidence proves his intent to hinder, delay, or defraud creditors.

---

[2] Inexplicably, some of the checks shown in Exhibit G appear more than once. For example, checks 6316 and 6330 appear on p. 0028 and p. 00030 of the exhibit. Nevertheless, the Individual Debtor has stipulated to the numbers.

3

Count II against the Individual Debtor in the individual case seeks denial of discharge pursuant to section 727(a)(2)(B) for post-petition fraudulent transfers of property of the Corporate Debtor, alleging that the Individual Debtor transferred over $214,000 from the Corporate Debtor after the cases were filed. Again, the Individual Debtor does not contest the numbers but does deny the necessary intent to hinder, delay, or defraud creditors or the Trustee.

The issue common to counts I and II is intent to hinder, delay, or defraud creditors or the Trustee. The Trustee's main argument here is that the delay between late January, 2005, when the Individual Debtor admits he knew the bankruptcies had been filed, and April 27, 2005, when the schedules were filed, was so long that the Individual Debtor "had to know that that would hinder and delay the trustee." Transcript, p. 84. Further, the Trustee asserts that the Individual Debtor's entire course of conduct "fit[s] into a pattern, and that pattern is to mislead the trustee into thinking that this was essentially a no asset case or was a case of very small assets." *Id.* at 12. Counsel for the Individual Debtor responds by pointing to the descriptions on the "memo" portions of the checks, arguing that these show a lack of intent to hinder, delay, or defraud. *Id.* at 88. He also argues that any omissions from the schedules were minor and that there is no evidence that the Individual Debtor tried to hide assets.

Although the question is a close one, the court concludes that the Trustee's case falls short of the preponderance of the evidence necessary to sustain his burden of proof on the issue of intent to hinder, delay, or defraud. Accordingly, judgment will be entered in favor of the Individual Debtor and against the Trustee on counts I and II of the complaint

Count III seeks denial of discharge pursuant to section 727(a)(3) for failure or refusal to turn over or keep books and records of the Corporate Debtor. Although a few business records

4

were turned over to the Trustee during the administration of the case and others were promised to the Trustee during the meetings of creditors of the Individual Debtor and the Corporate Debtor, the only significant records received by the Trustee are records of a checking account of the Corporate Debtor at the Old Second National Bank in Aurora, Illinois.

At trial, counsel for the Individual Debtor argued that the records from the checking account were sufficient to satisfy the record-keeping requirements of section 727(a)(3). The court disagrees. In a case with records very similar to the records here, the Seventh Circuit held as follows:

> Section 727(a)(3) requires as a precondition to discharge that debtors produce records which provide creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *In re Martin*, 141 B.R. 986, 995 (Bankr.N.D.Ill.1992). The provision ensures that trustees and creditors will receive sufficient information to enable them to "trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions." *In re Martin*, 141 B.R. at 995.... The records furnished by Juzwiak–checking account ledgers, canceled checks, bank statements, and a 1993 income tax return–do not enable Cargill to reconstruct Juzwiak's grain sale transactions or to track his financial dealings for any period of time with any degree of completeness or accuracy. Primarily, this is because the deposit slips and other checking account records do not disclose the source of the funds deposited and additionally because there is no substantiation of expenses.

*In re Juzwiak*, 89 F.3d 424, 427-28 (7th Cir. 1996) (citations omitted).

The bankruptcy judge in *Juzwiak* concluded that the records were sufficient because the debtor had testified that he could orally supplement the records. The Seventh Circuit rejected that position as a matter of law:

> The bankruptcy court essentially found that substantial records were available and that a financial history could be constructed if Cargill had an accountant organize the documents and speak to Juzwiak to obtain any missing information. We do

> not find this factual finding to be clearly erroneous; rather, we agree with the district court that the legal conclusion drawn from this finding, i.e., that § 727(a)(3) is satisfied, is based on several misconceptions of the law.
> 
> First, the burden is not on the creditor to organize and reconstruct the debtor's business affairs.....
> 
> In addition, the bankruptcy court erred in requiring Cargill to rely on Juzwiak's unsubstantiated oral testimony regarding the source of the funds deposited and the details of certain disbursements. Cargill was entitled to written documentation of these important pieces of information. Oral testimony is not a valid substitute or supplement for concrete written records.

*Id.* at 429 (citations omitted).

The records furnished to the Trustee in the case before the court clearly do not satisfy section 727(a)(3) as elucidated in *Juzwiak*. No records document the sources of funds deposited into the checking account. Although many of the checks made out to "cash" have purported explanations on the "memo" line on the faces of the checks, such notes are not sufficient explanations of the transactions. Moreover, even crediting the explanations, checks made out to "cash" carrying the explanation "petty cash" or carrying no explanation at all amount to $6,950 in the period between September 24, 2004, and December 7, 2004. Further, between the beginning of October and the end of December 2004, there is over $20,000 in checks payable to the Individual Debtor with the explanation "repay loan," even though there is no documentation supporting such an explanation. These records clearly fall below any reasonable standard of acceptable records for the Corporate Debtor. Unlike counts I and II, there is no intent required under count III. Accordingly, the Trustee has proved the charge in count III, and the Individual Debtor will be denied a discharge on that basis.

Count IV seeks denial of discharge pursuant to section 727(a)(4)(A) for false oath. The allegations are that the Individual Debtor, as president of the Corporate Debtor, signed the

schedules and statement of financial affairs of the Corporate Debtor while under oath and that the schedules and statement contained numerous false statements. Some of the alleged false statements are relatively minor. Others are explained by the fact that counsel for the debtors chose to use the same schedules in both cases, offering the justification that he was unsure whether the Corporate Debtor was in good standing with the Illinois Secretary of State. Transcript, p. 20. Nevertheless, two of the false statements are so significant that either one alone justifies denial of the Individual Debtor's discharge.

First, paragraph 1 of the statement of financial affairs of the Corporate Debtor lists income as "$50,000 from Midwest Millwork." Although this statement of income may be explained by the same statements being filed in both cases and by a lack of understanding of the difference between gross income and net income, the statement is clearly false in light of the Individual Debtor's testimony at the meetings of creditors on June 9, 2005, that the Corporate Debtor's gross income in 2004 was approximately $1,300,000. The misstatement was obviously misleading. Although the creditors that filed these involuntary cases may well have had knowledge of the Corporate Debtor's actual income, there is nothing in the record to suggest that the Trustee had or should have had such knowledge. If an accurate income figure had been included in the statement, the Trustee's approach to the administration of the case most likely would have been very different. Accordingly, this one false statement is sufficient to sustain the Trustee's burden on count IV.

Second, the schedules of the Corporate Debtor disclosed only the checking account of the Individual Debtor and failed to disclose the checking account of the Corporate Debtor. Over $486,000 flowed through this corporate account between August 4, 2004, and December 27,

7

2004, and it clearly was an asset that the Trustee needed to know about. This, too, by itself would be sufficient to sustain the Trustee's burden on count IV. Accordingly, the Individual Debtor will be denied a discharge pursuant to section 717(a)(4)(A) under count IV.

Count V repeats the factual allegations about records from count III and asserts that the failure to turn over the records requested by the Trustee after the meetings of creditors was knowing and fraudulent and justifies denial of discharge pursuant to section 727(a)(4)(D). This provision, unlike section 727(a)(3) at issue in count III, requires proof of fraudulent intent. Although the issue is not identical to that in counts I and II, the court reaches the same conclusion, which is that the Trustee has failed to prove this element of his case. Accordingly, judgment will be entered for the Individual Debtor and against the Trustee on count V.

Counts VI and VII are both premised on section 727(a)(6)(A). They allege that the Individual Debtor was repeatedly ordered to file schedules in both cases but did not do so until April 27, 2005. Moreover, count VI alleges that the schedules filed by the Corporate Debtor "are so inadequate that the Defendant has failed to file schedules in that case and continues to refuse to obey the Court's lawful order to file schedules." The court concludes that the delay in filing the schedules and the deficiencies in the schedules are not sufficient to deny the Individual Debtor a discharge. Accordingly, judgment will be entered in favor of the Individual Debtor and against the Trustee on counts VI and VII.

To summarize, the court concludes that the Trustee has not proved his case under counts I, II, V, VI, and VII of the complaint, but he has proved counts III and IV. Accordingly, a judgment will be entered denying the Individual Debtor a discharge in case 04 B 47448.

### The Complaint for Turnover

The adversary proceeding filed against the Individual Debtor in the corporate case contains three counts. Count I is titled "Fraudulent Conveyance," and seeks judgment against the Individual Debtor in the amount of $126,257.96, representing transfers the Individual Debtor made on behalf of the Corporate Debtor by writing checks on the Corporate Debtor's checking account between September 1, 2004, and December 28, 2004. The count is based on section 548, without specifying which cause of action therein is being asserted. The allegations in count I and the Trustee's pre-trial statement make it clear that he is asserting both causes of action, and counsel for the debtors agreed that the statement fairly sets out the issues.

The cause of action under section 548(a)(1)(A) is frequently referred to as actual fraud. It requires, among other things, proof of intent to hinder, delay, or defraud creditors. The court concludes, as it did in the adversary filed in the individual case, that the Trustee has not furnished sufficient proof on this element.

The cause of action under section 548(a)(1)(B) is constructive fraud. It requires the plaintiff to prove that the debtor was insolvent at the time the transfer was made and that the debtor did not receive reasonably equivalent value in exchange for the transfer. Although the Trustee has made a good case that the Corporate Debtor was insolvent when these transfers were made, he has presented no evidence regarding the value, or lack thereof, received by the Corporate Debtor in exchange. The Trustee has the burden of proof on this issue, and he has not sustained it. Because the Trustee has proved neither actual fraud nor constructive fraud under section 548, judgment will be entered in favor of the Individual Debtor and against the Trustee on count I.

Count II, based on section 549, concerns post-petition transfers the Individual Debtor made by writing checks on the Corporate Debtor's checking account to himself (at least $35,398.00) or to "cash" ($33,404.91). The Trustee asks the court to avoid these transfers and to enter judgment against the Individual Debtor for the total. Count III, also based on section 549, along with section 521(a)(4), seeks to avoid post-petition transfers to third parties in the amount of $156,302.38 and judgment in that amount against the Individual Debtor.

Because the underlying bankruptcies were filed against the debtors involuntarily, section 549(b) is applicable. It protects the recipients of transfers during the gap between the filing of an involuntary petition and the entry of an order for relief, to the extent that post-petition value is given for the transfer. Although this provision might appear to afford a partial defense to the Individual Debtor, it does not, because of Federal Rule of Bankruptcy Procedure 6001, which provides in its entirety: "Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof." The effect of this rule here is to require the Individual Debtor to prove that he and the third parties gave post-petition value for the transfers. Because the debtors were prohibited from presenting evidence for violating the pre-trial order, there is no evidence on this issue. The Individual Debtor, as the entity asserting the validity of the transfers, has the burden of proof on this issue. Having failed to carry it, he loses on both counts. Therefore, the Trustee can avoid all of the post-petition transfers. Further, under section 550 the Trustee is entitled to recover the total amount from the Individual Debtor. Accordingly, judgment will be entered in favor of the Trustee and against the Individual Debtor on both counts II and III, in the total amount of $225,105.29.

This Memorandum Opinion will constitute findings of fact and conclusions of law.

Separate judgments will be entered.

DATE: 12-14-06

ENTERED:

*Bruce W. Black*
Bruce W. Black
Bankruptcy Judge